

FILED
DISTRICT COURT OF GUAM

NOV 16 2007

JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>      Plaintiff )<br><br>         v. )<br><br>HONOFRE J.O. CHARGUALAF )<br><br>     Defendant )<br>_____ ) | Civil Case No. # 99-00012-JSU<br>(Crim. Case No. # 95-00054) |

DEFENDANT'S MOTION FOR RELIEF FROM
A DEFECTIVE § 2255 JUDGEMENT,
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE, RULE 60(b)(4).

By: Honofre J.O. Chargualaf
Reg. No. # 01107-093
U.S.P. POLLOCK
P.O. BOX 2099
POLLOCK, LA. 71467

Defendant/Petitioner

TABLE OF CONTENTS

PAGE[S]:

I.   Introduction ......................................... 1

II.  Jurisdiction ......................................... 2

III. Background:

     a). Statement of Case .................................. 3

     b). Statement of Facts ................................. 4

IV.  Law and Arguments[s]:

     a). Unincorporated Guam not subject to the Commerce
         clause - Article 1, Section 8, Clause 3 ............ 5

     b). The Article IV district court of Guam is not a
         court of competent jurisdiction to decide upon
         Article III - "DISTRICT COURT OF THE UNITED STATES"
         matters, where jurisdiction is founded and based on
         the Provision Article 1, section 8, Clause 3 of the
         United States Constitution......................... 7

     c). Subject matter jurisdiction cannot be waived....... 13

     d). Article IV territorial court judges in Article IV
         courts cannot administer Article III - DISTRICT
         COURT OF THE UNITED STATES judicial functions in
         Article IV territorial courts...................... 14

     e). The district court of Guam cannot enforce statutory
         PENALTIES under Title 18 USCS § 924 (c) of the
         Federal Firearm Statute in relation to "STATES",
         where its jurisdiction is dependent on the
         Constitutional Provision - Art. 1, §. 8, Cl. 3 of
         the United States Constitution..................... 15

     f). Where the alleged federal firearm offenses were
         purely and wholly "local" matters of Guam's own
         territorial law, and should have been remanded
         to the SUPERIOR COURT OF GUAM, a court of Original
         and competent jurisdiction in the "Original"
         proceedings in Superior Court Case No. # CF 0006-95.
         Where the goverment of Guam can only act within
         the sphere of The Organic Act of Guam. Title 48
         USCA, §. 1421 et. seq. ............................ 17

     g). Lack of Commerce Clause in relationship to "STATE".. 19

V.   GROUNDS FOR RELIEF, AND THE RELIEF GRANTED.............. 24

VI.  CONCLUSION ........................................... 26

TABLES OF AUTHORITIES

CASES:                                                              PAGES:

Adams Express Co. v . Denver & R.G. Ry.Co., 16 F. 712
(1883).................................................... 11

Agana Bay Dev. Co., Ltd., v. Supreme Court of Guam,
529 F.2d 953 (9th Cir. 1976)...................... ....12 ,18

Anderson v. Mullaney, 191 F.2d 123 (9th Cir. 1951)........   6

Atlantic Cleaners & Dyers v. U.S., 286 U.S. 427, 76 L.Ed
1204, 52 S.Ct. 607 (1932).................................6,
Barusch v. Calvo, 685 F.2d 1199, 1202 (9th Cir. 1982)..... 20
Benner v. Porter, 50 U.S. 235, 13 L.E 119 (1850).......... 9,

Bordenelli v. U.S., 233 F.2d 120 (9th Cir. 1956).......... 18

Buscaglia v. Ballester, 162 F.2d 805 (1st. Cir. 1947)......6,

Butz v. Mendoza-Powers, 474 F.3d 1193 (9th Cir. 2007)...... 2

Callwood v. Callwood, 127 F.SUPP 179 (1954)............... 9,

Downes v. Bidwell, 182 U.S. 244, 45 L.Ed 1088, 21 S.Ct.
(1901)................................................12 ,15

Eldridge v. Richfield, 247 F.SUPP 407 (1965)............. 14

Exparte Bakelite Corp., 279 U.S. 438, 73 L.E 789, 49 S.Ct
411 (1929)............................................... 14

Glidden v. Zdnok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed 2d
671 (1962)............................................... 14

Gonzales v. Crosby, 545 U.S. 524, 162 L.Ed 2d 480, 125
S.Ct. 2641 (2005)........................................ 2

Harlow v. U.S, 301 F.2d 369 (5th Cir. 1962)............... 12

Hubbard v. Ammerman, 465 F.2d 1169 (5th Cir. 1972)........ 10

Huntington v. Attrill, 146 U.S. 657, 36 L.Ed 1123, 13
S.Ct. 224 (1892)......................................... 15

International longshoreman's & Warehouseman's Union v.
Wirtz, 170 F.2d 183 (1948)............................... 11,

James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119
71 L.Ed 569, 47 S.Ct. 308 (1927)......................... 15

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,
128 L.Ed 391, 114 S.Ct. 1673 (1994)...................... 2

Mailloux v. Mailloux, 554 F.2d 979 (9th Cir. 1977)..10,11,17,19

CASES:                                                                    PAGES:

Maxwell v. Federal Gold & Copper Co., 155 F. 110
(8th Cir. 1907)......................................... 11

McAllister v. U.S., 141 U.S. 174, 35 L.Ed 693, 11 S.Ct.
949 (1891)............................................, 12

McCulloch v. Marineros De Honduras, 372 U.S. 10, 9 L.Ed
547, 83 S.Ct. 671 (1963)................................ 16

Mookini v. U.S., 303 U.S. 201, 82 L.E 748, 58 S.Ct. 543
(1938)................................................. 8,9

Nguyen v. U.S., 538 U.S. 69, 156 L.Ed 2d 64, 123 S.Ct.
2130 (2003)............................................ 14

O'Donoghue v. U.S., 289 U.S. 516, 77 L.Ed 1356, 53 S.Ct.
740 (1933)............................................. 9,

Peterson v. Ball, 74 A.L.R. 187 (1931).................. 15

Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285
(9th Cir. 1985)........................... 5,6,7,16,17,21,22

Sayre & Company v. Riddell, 395 F.2d 407 (9th Cir. 1968)
....................................................5,

Starklof v. U.S.,20 F.2d 32 (9th Cir. 1927).............. 11

Steckle v. Lurie, 185 F.2d 921 (6th Cir. 1950)........... 9,

Territory of Guam v. Olsen, 431 U.S. 195, 52 L.Ed 2d 250
97 S.Ct. 1774 (1977)...................................8,17

The Corp. of New Orleans v. Winter, 14 U.S. 91, 4 L.Ed
44 (1816)............................................. 15

U.S. v. Bell, 90 F.3d 320 (8th Cir. 1996)............. .16,23

U.S. v. Bordallo, 857 F.2d 519 (9th Cir. 1988)........... 21

U.S. v. Cotton, 535 U.S. 625, 152 L.Ed 2d 860, 122 S.Ct.
1781 (2002)........................................... 14,25

U.S. v. Lee, 159 F.SUPP 2d 1241, (D.C. Hawai'i 2001)... 11,12

U.S. v. McMillan, 165 U.S. 504, 41 L.E 805, 17 S.Ct. 395
(1897)................................................. 9,

U.S. v. National Dairy Prod. Corp., 372 U.S. 29, 9 L.Ed
2d 561, 83 S.Ct. 594 (1963)............................ 16

U.S. v. Nukida, 8.F3d 665 (9th Cir. 1993)............... 14

U.S. v. Peter, 310 F.3d 709 (11th Cir. 2002)............. 14

CASES:                                                                    PAGES:

U.S. v. Rios, 140 F.SUPP 379 (1st. Cir. 1956)............ 7

U.S. v. Saunders, 641 F.2d 663, (9th Cir. 1980).......... 14

U.S. v. Seagraves, 100 F.SUPP 424 (D.C. Guam 1951)....... 8,

U.S. v. Wooley, 726 F.2d 1328 (9th Cir. 1983)............15

U.S. v. Wright, 15 F.R.D. 184 (1954).................... 11

Verlinden v. Central Bank of Nigeria, 461 U.S. 480, 76
L.Ed 2d 81, 103 S.Ct. 1962 (1983)...................... 24

Wells v. U.S., 214 F.2d 381 (5th Cir 1954).............. 9,


STATUTES:
18 USCS § 666 (b) ........................................ 21
Title 18 USCS § 921 et. seq............... ...4,5,17,18,22

Title 18 USCS § 922 ............................ 3,21,22

Title 18 USCS § 924 ...................... ...3,15,16,23

Title 18 USCS §§ 921-930..................... 7,17,21
 Title 18 USCS § 3231......................... 10
Title 28 USCS § CHAPTER 5.................. 8,10,11

Title 28 USCS §§ 81 et. seq. .................. 8,11

Title 28 USCS § 451.......................... 8

Title 28 USCS § 1331........................5,17,24

Title 28 USCS § 1335......................... 4

Title 28 USCS § 2255......................2,4,24
 Title 28 USCS Rule 60 (b)(4)....................13
Title 48 USCA § 1421a....................... 7,22

Title 48 USCA § 1421b........................ 13,12

Title 48 USCA § 1421b. (u)........ 1,5,12,18,25,26

Title 48 USCA §§ 1421 - 1424.............5,7,20,24
Title 48 USCA § 1424 (b)....................7,11,24
Title 48 USCA § 1469a ...................7,15,22

Title 48 USCA § 1664 ....................... 6
Title 48 USCA § 1801....................... 19
Title 48 USCA § 731

GUAM CODE:                                                    PAGE[S]:

Title 10 ...............................................3,18

UNITED STATES CONSTITUTION

Article 1, §. 8, Cl. 3 ..........1,4,5,13,16,17,20,22,23,24,25

Article III ...................................5,8,9,10,11,12

Article III, §. 1 ........................................10

Article IV .............................................9,10

Article IV, §. 3, Cl. 2 .............................10, 1,12


RULES:

Federal Rules of Civil Procedure, Rule 60(b)(4) ......1,2,25,26

Federal Criminal Code and Rules (2006), Rule 54 (c)..........8

OTHER:

16 Va. J. Int'L., The Applicability of Federal
Law To Guam ................................................6

The Organic Act of Guam and Related Federal Laws
Affecting Government Structure ...........................20

PUBLIC LAW:

Pub.L. 94-241, § 1, Mar.24, 1976, 90 Stat. 263 ..............19


EXHIBITS:

A - ........................................................4

B - ........................................................4

C - ........................................................4

D - ........................................................4

Honofre J.O. Chargualaf
Reg. # 01107-093
U.S. Penitentiary
P.O. Box 2099
Pollock, Louisiana. 71467

IN THE DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| Honofre J.O. Chargualaf | ) | Civil Case No. DC # CV:99-00012-JSU |
| Petitioner | ) | Criminal Case No. # CR:95-00054-01 |
| v. | ) | |
| United States of America | ) | |
| Respondent | ) | |

Motion for relief from a void judgement, pursuant to Federal Rules of Civil Procedure 60 (b) (4), issued by a court that lacked subject matter jurisdiction to adjudicate federal firearms offenses that are based on the Constitutional Commerce Clause Provision – Article 1, Section 8, Clause 3 of the United States Constitution.

I. INTRODUCTION

Now comes, Honofre J.O. Chargualaf, pro se, to move this court

for relief from a void judgement pursuant to Federal Rules of Civil

Procedure 60 (b) (4), because the Habeas court in CV-99-00012-JSU

failed to address sua sponte in petitioner's initial § 2255 motion

as to whether it had subject matter jurisdiction to adjudicate federal

firearm offenses in counts 1, 2, 3, 5, and 6, in which its basis

is derived from the commerce clause of the United States Constitution,

where Congress, acting on behalf of The Organic Act of Guam, Title

48 U.S.C.A. § 1421b. (u), et. seq., has not extended to the insular

island area known as Guam, an "unincorporated" territory of the United

States.

(1)

## II. JURISDICTION

This court has the authority to assume jurisdiction under The
Organic Act of Guam, and under Federal Rules of Civil Procedure Rule
60 (b) (4), to review the merits of this motion.

This motion does not raise any new claim. This is a "true" motion
pursuant to Title 28 U.S.C.S., Federal Rules of Civil Procedure Rule
60 (b) (4), and is not to be treated as a second or successive §
2255 habeas motion.

Petitioner is not attacking his sentence or conviction. Therefore
this petition is not the equivalent of a second or successive habeas
motion per 28 U.S.C.S. § 2255, and cannot be subjected to the restrictions
of such motions. This petitioner makes no federal habeas corpus "claim"
within the meaning of § 2255. See Gonzales v. Crosby, 545 U.S. 524,
162 L.Ed 2d 480, 125 S.Ct. 2641 (2005).

Under Federal Rules of Civil Procedure Rule 60 (b) (4), petitioner
request vacatur from this courts previous habeas judgement that was
entered on August 9, 2001. Said judgement is void because the district
court of Guam lacked subject matter jurisdiction. In Butz v. Mendoza-Powers
474 F.3d 1193 (9th Cir. 2007) the court held per Curium:

> "When a district court dismisses with prejudice a petition for
> writ of habeas corpus under 28 USC § 2244 without reaching the merits
> of the claims raised therein, the petitioner may seek relief from
> a judgement through a motion under under Federal Rule of Civil Procedure
> 60 (b), because such motion is not the equivalent of a second or
> successive petition under the AntiTerrorism and Effective Death Penalty
> Act of 1996 ("AEDPA")."

The Supreme Court held in Kokkonen v. Guardian Life Ins. Co. Of
America, 511 U.S. 375, 128 L.Ed 2d 391, 114 S.Ct. 1673 (1994) that:

> "It is to be presumed that a cause lies outside of the limited
> jurisdiction of the federal courts; the burden of establishing the
> contrary rest on the party asserting jurisdiction."

III. BACKGROUND

a). Statement of the case

On October 28, 1994 petitioner was arrested by local police on the island of Guam for possession of a machine-Gun in violation of Guam local law 10 GCA HEALTH AND SAFETY CH. § 60102. Petitioner was later released early the following morning on October 29, 1994, pending a summons to appear in THE SUPERIOR COURT OF GUAM. On January 4, 1995 petitioner was arrested a second time for possession of an unregistere firearm with a silencing device in violation of Guam local law 10 GCA HEALTH AND SAFETY CH. § 60102. This time petitioner was then held in Guam's 'Territorial Detention Center'. On January 12, 1995 petitioner was indicted by the THE PEOPLE OF THE TERRITORY OF GUAM, whereupon petitioner appeared before THE SUPERIOR COURT OF GUAM in Case No. # CF 0006-95 where he was arraigned and released after posting bail in THE SUPERIOR COURT pending trial.

On March 29, 1995 a second indictment was issued out, this one out of the district court of Guam against the petitioner for the same offenses. A warrant was then issued and petitioner was subsequently arrested by federal agents on March 30, 1995 while on bail from Guam SUPERIOR COURT. On April 19, 1995 a superseding indictment from the district court of Guam was returned charging that the petitioner violated the following laws of the United States in Criminal Case No. # Cr: 95-00054-01 :

Title 18 USC § 922 (a)(4) in count 1; 18 USC § 922 (o)(1) in count 2; 18 USC § 922 (g)(3) in count 3; 18 USC § 924 (c) in count 5; 18 USC § 922 (g)(3) in count 6; and 18 USC § 924 (c) in count 9.

Jury trial was held on November 14, 1995. On November 20, 1995 the jury returned a verdict of guilt on all counts against the petitioner.

(3)

On May 10, 1996 petitioner was sentenced to a maximum term of 44 years. On July 18, 1997 the Ninth Circuit denied petitioner's direct appeal, and on August 9, 2001 petitioner's motion pursuant to 28 U.S.C.S § 2255 was denied also.

## b). Statement of the facts

On January 25, 1999 petitioner filed a habeas motion per § 2255 for the alleged firearms violations found in Title 18 USC § 921 et. seq. of the federal firearm statute, that are found in pages 2, 7, 9, 13, 14, and 16 in petitioner's initial § 2255, see EXHIBIT (A), and in pages 1, 2, 3, 6, 14, 16, 19, 20, 22 and 24 in the goverment's opposition to petitioner's § 2255 concerning the alleged violations, 18 USC §§ 922-924, where its jurisdiction to find a crime is based on the commerce provision Art. 1, §. 8, Cl. 3 of the United States Constitution. See EXHIBIT (B).

The Commerce provision contained in the firearm statute 18 USC § 921 et. seq. that are found in petitioner's indictment, see EXHIBIT (C); Judgement and Commitment Orders, as EXHIBIT (D), and in petitioner's initial § 2255 as EXHIBIT (A), should have alerted the habeas court to investigate as to whether the trial court had jurisdiction granted by the commerce clause provision to try the petitioner in Criminal Case No. # CR:95-00054-01 for the alleged violations, and whether the § 2255 court in Civil Action No. # 99-00012-JSU had jurisdiction under 18 USC 921 et. seq., and both Federal Question and Commerce jurisdiction under Title 28 USC § 1331, and jurisdiction under Fines, Penalties, or Forfeiture under 28 USC § 1335 to decide upon the trial courts findings in criminal matters that were raised in Civil Action No. # 99-00012.

Because 18 USC § 921 et. seq. is not a "free-standing" statute, the district court had a duty to investigate first as to whether it had jurisdiction, Art. 1, §. 8, Clause of the Federal Congressional Commerce Clause under that statute, and jurisdiction under 28 USC §. 1331 Commerce and Penalties to address the issues of the commerce provision supporting the federal firearm statute.

Out of facts and necessity the § 2255 court must possess such jurisdiction, such as those provisions that were granted by Congress in The Organic Act of Guam, Title 48 USCA § 1421b. (u), as well as Article III standing to adjudicate the dispute in Civil Case No. # 99-00012-JSU that was born out of Criminal Case No. # CR:95-00054-01.


IV. LAW AND ARGUEMENT

Civil Rule 60 (b) (4) authorizes petitioner to reopen his § 2255 judgement for jurisdictional defects that affected the entire foundation and outcome in Civil Case No.# 99-00012-JSU Ab initio because the habeas court failed to sua sponte hold the trial court that it lacked subject matter jurisdiction to adjudicate six (6) alleged firearm offenses in the indictment that were based on the commerce clause Article §. 8. Cl. 3 of the United States Constitution. Where said jurisdiction has not been extended to the government of Guam in its Organic Act, 48 USCA §§ 1421-1424 to adopt or exercise within its judiciary. Although appeared before the court, see petitioner's indictment as EXHIBIT (C), yet failed to address.


a). <u>Unincorporated Guam not subject to the Commerce Clause</u>

In <u>Sakamoto v. Duty Free Shoppers, Ltd.</u>, 764. F. 2d 1285 (1985) the Ninth Circuits Court of Appeals held in part at 1285 that:

"Limitations which the commerce clause places upon the power of state governments to burden commerce do not apply to the government of Guam, because Guam is not a "state"." U.S.C.A. Const. Art. 1, §. 8, cl. 3.

In <u>Sayre & Company v. Riddell</u>, 395 F.2d 407 (1968 Guam), at 408, the 9th Ciri stated "Limitations upon state legislatures by commerce clause are inapplicale to power of Congress to legislate with respect to territories of the United States" (5)

The United States Supreme Court in Atlantic Cleaners & Dyers v. U.S., 286 U.S. 427, 76 L.Ed 1204 (1932) held that "Commerce in the District of Columbia and of the United States territories does not constitute interstate commerce". Sakamoto at 1287 stated that ". . . constitutional restrictions on the states' regulation of interstate commerce do not extend to Unincorporated territories". The clause in the federal constitution prohibiting imposition on duties or impost on imports is applicable only to States, and does not apply to an organized territory not incorporated into the United States, Busgaglia v. Ballester, 162 F.2d 805-807 (1st Cir. 1947).

In Title 48 USCA § 1664. under Coastwise shipping laws of the United States inapplicable it states:

"The provisions of law of the United States restricting to vessels of the United States the transportation of passengers and merchandise directly or indirectly from any port of the United States to another port of the United States shall not be applicable to commerce between the islands of American Samoa or between those islands and other ports under the jurisdiction of the United States."

See, The Applicability of Federal Law to Guam, by Arnold H. Leibowitz, 16 Va. J. Int'L. 1975-1976, which reads in part at pages 26, 28, and 29 as follows:

at 26.
THE DEGREE OF THE RESTRICTION DEPENDS ON THE APPLICABILITY OF THE CONSTITUTION TO GUAM, WHICH IS IN TURN DEPENDENT UPON THE DISTINCTION BETWEEN **UNINCORPORATED** AND **INCORPORATED** TERRITORIES.

at 28.
THE CONSTITUTION IS FULLY APPLICABLE TO AN **INCORPORATED** TERRITORY BUT TO AN **UNINCORPORATED** TERRITORY ONLY THE FUNDAMENTAL PROVISIONS APPLY, I.E., "THE GENERAL PROHIBITIONS". . . .IN FAVOR OF THE LIBERTY AND PROPERTY OF THE CITIZEN . . .WHICH ARE AN ABSOLUTE DENIAL OF AUTHORITY . . .TO DO PARTICULAR ACTS."

at 29.
THE CONSTITUTIONAL RETRICTIONS UPON STATE WITH RESPECT TO THE REGULATIONS OF **INTERSTATE AND FOREIGN COMMERCE** AND THE LEVYING OF THE DUTIES OR IMPOST ON IMPORTS WERE HELD NOT TO APPLY. ANDERSON v. MULLANEY, 191 F.2d 123, (9th Cir. 1951), AFF'D, 342 U.S. 415 (1952).

(6)

Title 18 USCS §§9921-9930 of the federal firearm statute bears

no reference to **Unincorporated** territories or, **Insular Areas** like

Guam. As referred, defined, and termed to be by congressional policy

in Title 48 USCA § 1421a., and at § 1469a. of that title to bring

it within the jurisdiction of the commerce clause. Art. 1, §. 8,.

cl. 3 of the United States Constitution.

See <u>United States v. Figueroa Rios</u>, 140 F.Supp. 376-379, (1st

Cir. 1956), which is a historical landmark federal firearm case where

the lower court at the time in the **unincorporated** territory of Puerto

Rico during its "pre-commonwealth" transition, held true that the

federal firearm statute is dependant on the distinction between

**unincorporated** and **incorporated** territories.

THE ORGANIC ACT OF GUAM, SubChap 1, General Provisions, page 8

reads as follows:

"Because Guam is unincorporated territory having only the powers
given it by Congress "it is in essence an instrumentality of the
federal goverment."As Such, the negative implications of the Commerce
clause of the United States Constitution do not apply to Guam. <u>Sakamoto
v. Duty Free Shoppers Ltd.</u>, D.C Guam 1983, 613 F.Supp. 381, aff'd.
764 F.2d 1285, cert. den. 106 S.Ct. 1457, 89 L.Ed. 2d 715.

Property belonging to the United States that is appurtenant

to and is not geographically part of the continental crust of the

United States , is then outside the restrictions applicable to interstate

commerce.

b). The "Article IV" district court of Guam is not a court of competent
jurisdiction to decide upon <u>Article III</u> matters where jurisdiction
is based on the Constitutional provision and requirement of Art.
1, §. 8, cl. 3, and Art. III, §. 1,& 2, Cl. 1 of the United States
Constitution.

See title 48 USCA SUBCHAPTER IV-THE JUDICIARY § 1424 (b) under

<u>Jurisdiction</u> where it reads:

The District Court of Guam shall have the jurisdiction of a district
court of the United States, including, but not limited to, the diversity
jurisdiction provided for in section 1332 of Title 28, and that of
a bankruptcy court of the United States.

See Federal Criminal Code and Rules, 2006 edition, Rule 54 (c)

under Application of terms:

" 'District court' includes all district courts named in subdivision
(a) of this rule.

See the Advisory Committee Notes under Rule 54 of the 2006 edition

at page 203 where it reads in part:

## ADVISORY COMMITTEE NOTES

### 1944 Adoption

**Note to Subdivision (a)(1),** The Act of June 28, 1940 (54 Stat 688);

The phrase "district court of the United States" was held not
to include district courts in the territories and insular possessions,
Mookini v. United States, 303 U.S. 201, 58 S.Ct. 543, 82 L.Ed. 748,
conformed to 95 F.2d 960.

The Judicial Code defines the term "district court" to mean

specifically **Article III** Constitutional District Courts of the United

States.

Title 28 USCS § 451 under DEFINITIONS reads in part:

"The terms 'district court' and 'district court of the United
States' means courts constituted by  CHAPTER 5 of this title [28
USCS §§ 81 et. seq.]"

However, the island of Guam, nor "The District Court  of Guam",

is amongst those Article III courts constituted by CHAPTER 5 of

28 USCS which is comprised of STATES embracing such courts of Article

III standing. See Territory of Guam v. Olsen, 52 L.Ed 2d 250 (1977).

The  lower court in United States v. Seagraves, 100 F.Supp.

at 425 (D.C. Guam 1951) held that the district court of Guam is

a "territorial court" created  by  virtue of the sovereign congressional

faculty , granted under **Article IV, Sec. 3**, of the Constitution,

rather than a "true" United States court established under **Article

III** of the Constitution to administer the Judicial power of the

United States.

In _Mookini v. United States_, 303 U.S. 201, the Supreme Court stated that "territorial courts are not courts in which the Judicial Power conferred by the Constitution on the general goverment can be deposited, and they are incapable of receiving it. Territorial courts are not invested with any part of the Judicial power defined in Article III (ie. Federal Courts, Judges, and Jurisdiction).

The Judicial Code is inapplicable to territorial courts created by Congress, _Callwood v. Callwood_, 127 F.Supp. 179 (3rd. Cir. 1954). Territorial courts are not Organized under the Constitution, meaning that they are not Constitutional courts, rather they are creatures of Congressional enactment and can be properly termed 'legislative courts', _Mookini v. United States_, 303 U.S. 201; _Benner v. Porter_, 50 U.S. 235; _O'Donoghue v. United States_, 289 U.S. 516.

The Circuit Court in _Wells v. United States_, 214 F.2d 380-383 (5th Cir. 1954) held that the term "district court" means only those courts which are created under **Art. III** of the United States Constitution.

Territorial courts are not established under the provision of the federal constitution relating to the Judicial system [Art. III], nor are they organized by Congress under the Constitution [50 U.S. 235], and Congress cannot extend the jurisdiction of a district court beyond the bounds of **Art. III**, see _Steckle v. Lurie_, 185 F.2d 921 (6th Cir. 1950) where the court held that "territorial courts" do not enjoy the benefits of **Art. III** status. Courts of territory are not strictly speaking courts of the United States, _United States v. McMillan_, 165 U.S. 504, 41 LE 805, 17 S.Ct. 740 (1897).

The Act of Congress creating **Art. III** United States District Courts(USDC) do not vest **Art. IV** territorial courts with any criminal jurisdiction as is conferred by congressional enactment under the Constitution.

(9)

See <u>Hubbard v. Ammerman</u>, 465 F.2d 1169 (5th Cir. 1972) where the court stated <u>at</u> 1176:

"that United States District Courts have only such jurisdiction as is conferred by an act of Congress under Art. III, §. 2 of the Constitution."

In <u>Mailloux v. Mailloux</u>, 554 F.2d 976 (9th Cir. 1977) <u>at</u> 979 where the Circuit court held:

"The district court of Guam under this scheme is a legislative court created pursuant to the Constitutional power of Congress over territories, **Art. IV, §. 3, cl. 2** and not a Constitutional court created by way of the Judicial power in **Art. III, §. 1.**

<u>At</u> 982 in <u>Mailloux</u>, it goes on further to say that:

"it has been established that the legislative power of the territorial legislature is the legislative power of the territory, not that of the United States. . .It's laws, unless set aside by Congress or the courts, are the laws of the territory, they are not the laws of th United States."

Nothing in 18 USCS § 3231 <u>DISTRICT COURTS</u>, or 18 USCS § 921 et. seq. of the federal firearm statute suggest granting, conferring, or extending jurisdiction that of a District Court of the United States upon **unincorporated** "territorial courts" in insular areas such as Guam, to be very specific. Neither does its designation, The "District Court" of Guam, automatically confer the jurisdiction that of a District Court of the United States (Art. III), just because it bears the "label" of one. The district court of Guam is not a "District Court of the United States" (USDC), rather it is a "territorial court" to be precise.

Title 18 USCS § 3231 refers only to **Article III** Constitutional District Courts <u>of the</u> United States that are constituted in Title 28 USCS CHAPTER 5., §§ 81 et. seq., and not **Article IV** insular territorial courts." Guam is not a State, but an island territory of the United States.

Case 1:95-cr-00054   Document 144   Filed 11/20/2007   Page 16 of 43

Again, the district court of Guam is not a "District Court of the United States", nor is it a "United States District Court", both of **Art.III** creation and constituted in 28 USCS §§ 81 et. seq., but is a "territorial court" created pursuant to the Congressional power of Congress under **Art. IV, S. 3, cl. 2.**

For these reasons and law cited herein alone, then the district court of Guam could not, and cannot have the jurisdiction that of a "District Court of the United States" as stated in title 48 USCA §1424 (b), where it reads in part:

"The district court of Guam shall have the jurisdiction of a district court of the United States."

The phrase "court of the United States" means courts created by Congress under **Art. III** of the Constitution and not "territorial courts", International Longshoreman's & Warehouseman's Union v. Wirtz, 170 F.2d 183 (1948). As used in 18 USCS & 28 USCS, the term "District Court" means only those courts which are created under **Art. III** of the Constitution and constituted by 28 USCS §§ 81 et. seq., Wells v. United States, 214 F.2d 380; Adams Express Co. v. Denver & R.G. Ry. Co., 16 F. 712, 715 (1883); Maxwell v. Federal Gold & Copper Co., 155 F. 110 (8th Cir. 1907); Starklof v. United States, 20 F. 32 (9th Cir. 1927); United States v. Wright, 15 F.R.D. 184 (1954). The court in Mailloux 1554 F.2d held also at 984 that Judicial legislation has no authority beyond the territorial limits of Guam. Which leaves one to wonder, why then does it bring Actions in the name of "United States vs. "? if it's only a territorial court of limited jurisdiction?

See United States v. Lee, 159 F.Supp 2d. (2001) at 1241 where the District Court of Hawai'i held that Federal Judicial "districts" are statutorily defined in 28 USCS §§ 81±144 (listing all judicial "Districts")

In <u>Harlow v. United States</u>, 301 F.2d 361-370 (5th Cir. 1962), the court held that: a United States territory is not a 'District' under 18 USCS § 3238 "unless the court having jurisdiction over the territory is invested with the <u>same</u> (**Art. III**) power as ordinary District Courts." 28 USCS CHAPTER 5, §§ 81-144.

As in <u>United States v. Lee</u>, 159 F.Supp (D.C. Hawai'i 2001) at 1244, in comparison to Western Samoa, the island of Guam is "<u>Unincorporated</u> territory" of the United States as well. And like Western Samoa, it to is not Constituted under CHAPTER 5. of 28 USCS to be statutorily termed and defined to be a "true" Judicial 'District'.

The territorial goverment of Guam can only act within the limits of The Organic Act of Guam, USCA Const. **Art. IV, §. 3**; Organic Act of Guam, §§ 1 et. seq., 22 as amended 48 USCA § 1421 et. seq. 1424.", <u>Agana Bay Develop. Co., Ltd., v. Supreme Court of Guam</u>, 529 F.2d 953 (9th Cir. 1976).

"Territorial Courts" is not one of those courts mentioned in Article III, §. 1 of the Constitution, <u>McAllister v. United States</u>, 141 U.S. 174, 35 L.Ed 693, 11 S.Ct. 949 (1891); <u>Downes v. Bidwell</u>, 182 U.S. 244, 45 L.Ed 1088, 21 S.Ct 770 (1901).

Because the Ninth Circuit court of appeals held in <u>Agana Bay</u> <u>Devv Co.</u>, at 529 F.2d 953 that the "Territorial Government act only within the limits of The Organic Act", yet the district court of Guam exceeded its authority by applying the Commerce Clause im Criminal Case No. # CR:95-00054 and <u>indirectly</u> in Civil Case No. # 99-00012, a provision that has not been extended to Guam in its Organic Act, 48 USCA § 1421b. (u).

The Congressional Commerce Clause Provision of the United States Constitution was never authorized by Congress to be exercised in the district court of Guam for the unincorporated territory of Guam. Therefore the federal firearm statute, and the basis for its jurisdiction (**Art. 1, §. 8, cl.3**) and its application in its Criminal Code 18 USCS § 921 et. seq. is inapplicable for lack of subject-matter jurisdiction and lack of the commerce clause, a 'provision' that cannot be applied to alleged firearm offenses that are wholly "local" in a territorial court that has been designated a "district court", and should have been transferred back to the 'Original jurisdiction' of Guam Superior Court in Case No. # CF 0006-95.

Because of this unauthorized application of the Commerce Clause Art. 1, §. 8, Cl. 3 in this matter, this petitioner moves this court for releif from a **void judgement** for lack of subject matter jurisdiction.


**c). Subject-matter Jurisdiction Cannot Be Waived**

In general, the district court of Guam did not have subject-matter jurisdiction to adjudicate the alleged federal firearm offenses in both criminal and civil proceedings in this matter. For that reason the Civil Judgement here in Civil No. # 99-00012 is void.

Due to the lack of jurisidiction and the void judgements derived and entered therefrom, this court has a constitutional and statutory mandated duty to enter a judgement and order discharging this petitioner of said void judgements pursuant to Title 28 USCS 60 (b) (4), and Guam's Bill of rights, Titlt 48 § 1421b., and (u) of that subsection.

The above rules of law has vested this court with authority to assume jurisdiction to review and set aside a void judgement pursuant to 28 USCS Rule 60 (b) (4).

(13)

The court held in Eldrige v. Richfield, 247 F.Supp 407 (D.C. 1965), that when subject matter jurisdiction on an action is lacking, it cannot be conferred or supplied by consent of both parties or by estoppel, laches, or by waiver of either party. And it is to be noted that petitioner can challenge jurisdiction at any time of the procedings, Glidden v. Zdanok, 370 U.S. 530, 8 L.Ed 2d 671, 82 S.Ct. 1459 (1962), and may be asserted at any time, and will be considered on appeal regardless of whether the issue was raised at trial court, U.S. v. Nukida, 8 F.3d 665 (9th Cir. 1993); see also United States v. Cotton, 535 U.S. 625, 152 L.Ed 2d 860, 122 S.Ct. 1781 (2002).

Defects in subject matter jurisdiction require correction regardless of whether the error was raised in trial court, United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002). Futhermore, since jurisdiction error implicates the courts power to adjudicate the matter before it, such error can never be waived by parties to litigation. The procedural default doctrine does not apply in this petition.

d). Article IV Territorial Judges Cannot Administer Article III District Court of The United States Judicial Functions In Article IV Territorial Courts in unincorporated Island Territories.

The court held in United States v. Saunders, 641 F.2d 660, 663 (9th Cir, 1980) in part:

"While Congress may establish !legislative courts' whose judges do not enjoy Article III guarantees, "inherently judicial task" must be performed by Artticle III Judges." See e.g., Glidden Co. v. Zdanok, 370 U.S. 530, 8 L.Ed 2d 671, 82 S.Ct. 1459, 1472 (1962); Exparte Bakedite Corp., 279 U.S. 438, 73 L.Ed 789, 49 S.Ct. 411, 458, (1929).

In Nguyen v. United States, 539 U.S. 69, 156 L.Ed 2d 64, 123 S.Ct. 2130 (2003) the Supreme Court held that non-Article III judges (Art. 1 & Art. IV), do not have the authority to decide upon defendants initial appeal derived from district court of Guam proceedings.

(14)

The judicial power of the United States may be exercised only by Article III judges. See United States v. Wooley. 726 F.2d 1328 (9th Cir 1983).

Because of the laws and the facts stated herein, the judge was without authority to decide upon petitioner's proceedings and was precluded from entering an unlawful judgement.

### e). Penalties

Petitioner was charged in count V of the superseding indictment with "unlawful carrying of a firearm equipped with a silencer during a drug trafficking", Title 18 UCSC § 924(c), and was sentenced to 30 years for this alleged offense alone.

Title 18 USCS § 924 (c) is a penalty statute. And strictly speaking, a penal statute is one which imposes punishment for an offense committed against the State, Huntington v. Attrill, 146 U.S. 657, 36 L.Ed 1123, 13 S.Ct. 224 (1892).

However, in The Corp. of New Orleans v. winter, 14 U.S. 91, 4 L.Ed 44, wheat 91 (1816), the United States Supreme court held that "territory is not a 'State' within the meaning of that term as used in Article III, §. 2, cl. 1" . See also , Downes v. Bidwell, 182 U.S. 244, 45 L.Ed 1088, 21 S.Ct. 770 (1901).

The term "penal statute" is extended to include any act which imposes a penalty, Peterson v. Ball, 74 A.L.R 187 (1931). Generally, penal statutes are not recognized or enforced in jurisdictions other than those in which they are enacted, James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 71 L.Ed 569, 47 S.Ct. 308 (1927).

As described in 48 USCA § 1469a., unincorporated Guam is declared to be an "Insular Area" by congressional policy. Without more.

The island of Guam is not a State to enforce "statutory penalties" pursuant to 18 USCS, or such legislation that has not been enacted within its jurisdiction due to this inconsistency, and due to the lack of the commerce clause, Art. 1, §. 8, cl. 3.

In <u>United States v. Bell</u>, 90 F.3d 318 (8th Cir 1996) the Circuit Court held in part at page 320:

"Section 924(c)(1), unlike § 922(q), is tied to interstate commerce. Section 924(c)(1) is not a free-standing statute; it imposes an additional penalty for using or carrying a firearm during or in relation to the violation of other federal statutes for which there plainly is a nexus to interstate commerce."

Yet, due to the lack of the commerce clause in count V in this matter, because the commerce clause has not been extended to Guam, and because Guam does not possess "extraterritorial jurisdiction" to enforce statutory penalties in relation to 'States'. With the facts and the law just stated, it is obvious that there could not plainly be any "nexus" tied to interstate commerce to enforce this count. Title 18 USCS § 924(c) is dependant on both relation to State and the commerce clause Article 1, §. 8, clause 3 of the United States constitution that permits both its use and federal involvement. So it to is inapplicable for lack of subject matter jurisdiction. See <u>Sakamoto</u> 764 F.2d (9th Cir 1985) at 1285.

In <u>McCulloch</u>, Supra, at 19, 9 L.Ed 2d 547, 83 S.Ct. 671 (1963) the Supreme Court stated in part:

"Despite the broad jurisdictional language, if an Act or Statute contains no words which definitely disclose an intention to give it extraterritorial effect, then it is without jurisdiction." As any specific language reflecting Congressional intent.

See also, <u>U.S. v. National Dairy Products</u>, 372 U.S. 29. 9 L.Ed 2d 561, 83 S.Ct. 594 (1963).

Due to the lack of jurisdiction of count (v) in Civil No. # <u>99-00012</u>, count is therefore uninforcible in petitioner's judgement.

**f). The Alleged Federal Firearm Offenses In CR:95-00054-01 And In CV:99-00012 Were Purely 'Local' And Should Have Been Remanded Back To The Superior Court of Guam, A Court of Competent Jurisdiction In The Original Proceedings in Superior Court No. # CF 0006-95.**

In <u>Sakamoto v. Duty Free</u>, 764 F.2d (1985) at 1285, the Circuit

court held in part:

"Limitations which the commerce clause places upon power of State governments to burden commerce do not apply to the government of Guam, because Guam is not a "State". U.S.C.S. Const. Art. 1, §. 8, cl. 3.

With that in mind, and being part of Guam's governmental structure,

the district court of Guam cannot validly exercise congressional

commerce power under Title 18 USCS § 921 et. seq. of the Federal

Firearm statute, U.S.C.S. Const. Art. 1, §. 8, cl. 3; and <u>Commerce</u>

jurisdiction under Title 28 USCS § 1331, where legislation such

as Title 18 USCS §§ 921-930 is dependent on such jurisdiction for

a court of competent jurisdiction to hear, review, and decide on

such matters. The district court of Guam is without such authority

to enter judgement in Civil No. # <u>99-00012</u>, absent this Congressional

Commerce Clause requirement of jurisdiction.

See <u>Mailloux v. Mailloux</u>, 554 F.2d 976 (1977) where the Ninth Circuit

stated at 981:

"Except where an act of United States Congress specifically vest jurisdiction of a cause in the District Court of Guam, every reference to law, rule or regulation to the original jurisdiction of the District Court of Guam, concerning a matter arising under the laws of Guam, shall be read and mean the Superior Court of Guam."

The Supreme Court held in <u>Territory of Guam v. Olsen</u>, 431 U.S.

195, 52 L.Ed 2d 250, 97 S.Ct. 1774 (1977) at <u>431 US 201</u>:

"Important Federal issues can be presented in cases which do not fall within the district courts federal question jurisdiction, because they do not "arise under" Federal law, but instead fall under the exclusive jurisdiction vested in the Superior and Supreme Courts by the Reorganization Act."

Absent the provision, Art. 1, §. 8, cl.3 of the United States Constitution in the Firearm statute 18 USCS § 921 et. seq. as applied in the district court of Guam, then the cause in Criminal Case No.# CR:95-00054-01 and in Civil Case No.# 99-00012 did not, and does not, fall under the laws of the United States, its Constitution, or its treaties. Congress did not extend commerce jurisdiction to Guam. And in the absence of such federal jurisdiction, then the alleged firearm offenses were purely matters of Guam territorial law in violation of Guam's Firearm Code, Chapter 60, 10 GCA HEALTH and Safety CH. § 60102, and should have been dismissed in the district court of Guam for lack of jurisdiction to try this matter, and where the Original proceedings in Case No.# CF 0006-95 was already disposed of in the Superior Court of Guam. The absence of the commerce provision in relationship to Title 18 USCS § 921 et. seq. of the federal firearm statute as to its application in the district court of Guam is a clear 'statutory infirmity' that violates the bill of rights in Guam's Organic Act, 48 USCA § 1421b. (u).

These alleged offenses were local matters, and if anything at all, petitioner would have served a term of 4 years in Guam territorial prison as a first time felon as an adult under 10 GCA Health and Safety Ch. § 60102 for both machine-gun and silencer, as Guam has its own local firearm laws for such violations, CHAPTER 60 § 60102.

The district court of Guam can only operate within its sphere of authority, the commerce clause not one of them. The Ninth Circuit held in Agana Bay Dev. Co v. Supreme Court of Guam, 529 F.2d at 954 in part:

"the territorial government of Guam can act only to the limits of the Organic Act, just as national government must observe the limits of the Constitution." Bordenelli v. United States, 233 F.2d 120, (9th Cir 1956).

g). The Lack of Commerce Clause And Relationship To A State

Guam is unincorporated territory of the United States, Title 48 USCA § 1421a., contrary to that either the Northern Marianas, Title 48 USCA § 1801; or Puerto Rico, Title 48 USCA § 731, the latter two have incorporated status. Guam has been under the protection of the United States for almost a century, with the exception of 1941-1944 when held by the Japanese during world war II.

The Northern Marianas during that time were a Trust territory under the League of Nations. In 1947 the United States altered Guam into a Trust territory under the protection of the United States.

In 1952, the Japanese who until that time disputed the ownership of the islands renounced all claims of sovereignty. In 1978, The People of Northern Marianas opted to become a Commonwealth, Pub.L. 94-241, § 1, Mar.24, 1976, 90 Stat. 263., politically unifying themselves with the United States. However, Guam did not. In 1990, the United Nations closed out the Northern Marianas' trusteeship, ending the trust process.

Incorporated territories are those to which the Constitution has been extended fully by Congress. Unincorporated territories are not entitled to Constitutional guarantees in the absence of affirmitive Congressional action, Mailloux v. Mailloux, 554 F.2d 976 (9th Cir. 1977). By choosing "Incorporated Commonwealth" status, the Northern Marianas stand in direct contrast to Guam who remains unincorporated, not a Commonwealth, and an entirely different "body politic" as normally comprehended. Guam is not like a "Trust territory" which chose to to be a Commonwealth or, "Free Association" administered by the United States under a covenant of Incorporated Trusteeship.

Case 1:95-cr-00054    Document 144    Filed 11/20/2007    Page 25 of 43

Because Guam has no right to true self government, it is subject to the "plenary power of Congress with no inherent right to govern itself." The "authority of the Guam government depends entirely upon the will of Congress, and is at all times subject to such alteration as Congress may see fit to adopt." Barusch v. Calvo, 685 F.2d 1199, 1202 (9th Cir. 1982).

As a result, Congress has made no provisions on behalf of Guam's Executive, Legislative, or its Judicial department to apply the Commerce Clause, or extend the Commerce provision in any manner that would permit its application. There can be no assumption that such powers extend any further than presently delineated.

In Title 48 USCA § 1421b. at page 281 under **Commerce power** it states in part that "The commerce clause, **Art. 1, §. 8, cl. 3** of the United States Constitution, has not been extended to Guam.

By incorporation and assumption of the role of Commonwealth, the Northern Marianas completely adopted all laws, statutes, and Constitution of the United States - which the "unincorporated" island of Guam did not.

See **THE ORGANIC ACT of GUAM AND RELATED FEDERAL LAWS AFFECTING THE GOVERNMENTAL STRUCTURE OF GUAM**, 2002-GOVERNMENT OF GUAM - where it states in **SubChap 1-GENERAL PROVISIONS-p.8**:

"Because Guam is an unincorporated territory having only powers given it by Congress "it is in essence an instrumentality of the federal government." As such, the **negative implications** of the Commerce Clause of the United States Constitution do not apply to Guam. **Sakamoto v. Duty Free Shoppers, Ltd.**, D.C. Guam 1983, 613 F.Supp. 381, aff'd. 764 F.2d 1285, cert. den. 106 S.Ct. 1457, 89 L.Ed 2d 715.

Clearly, Guam is unincorporated territory enjoying only such powers as may be delegated to it by Congress in The Organic Act of Guam. Title 48 USCA §§ 1421-1424.

(20)

There is no "Commerce Clause" applicable to Guam. "The limitations which the Commerce Clause places upon the power of state governments to burden commerce does not apply to the Goverment of Guam, because Guam is not a State.    .....The historical role of the commerce clause has been confined to limiting regulatory and taxing action by states which may interfere with federal sovereignty." Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285, 1286 (9th Cir. 1985).

If Congress has never Designated the Commerce Clause to Guam expressly, and Guam was never incorporated to encompass all of the laws, statutes, and Constitution of the federal government; and, has not chosen Commonwealth status – then  the apparent piecmeal adoption provided by Congress does not automatically include either the Commerce Clause, interstate commerce, or those laws deriving or originating from the Congressional Commerce Clause Provision; or any implied application of the Commerce Clause such as that stipulated in the federal firearms statute, Title 18 USCS §§ 921-930, to find or constitute the basis of criminal jurisdiction.

"Scholarly commentary agrees that States' regulation of interstate commerce does not extend to "unincorporated territories." Sakamoto at 1287.

In United States v. Bordallo, 857 F.2d 519 (9th Cir. 1988) states that "Guam is not a 'State' for the purpose of bribery statute applicable to agents of state agency." For example, Title 18 USCS § 666 (b) reads as: "Whoever, being an agent of an organization, or of a state or local government..." provides a limitation on  the application. 18 USCS § 922 of the federal firearm statute provides a limitation as well, and is subject to those same retrictions, as is 18 USCS § 924 (c), for it derives its powers from 18 USCS § 922.

(21)

Title 18 USCS § 922(a)(2)(C) Provides:

(C) nothing in this paragraph shall be construed as applying
in any manner in the District of Columbia, the Commonwealth
of Puerto Rico, or any possession of the United States differently
than it would apply it the district of Columbia, the Commonwealth
of Puerto Rico, or the possession were in fact a State of
the United States.

But, remember, Sakamoto states that '. . . Constitutional restriction

on the States' regulation of interstate commerce do not extend

to unincorporated territories." at [1287]. Thus, Guam does not have

the same standing as 'incorporated' Commonwealth Puerto Rico, Washington

D.C., or even the Northern, "incorporated" Commonwealth Marianas.

The Circuit law so dictates.

18 USCS § 921 under Definitions (a)(2) provides:

(2) The term "interstate or foreign commerce" includes commerce
between any place outside of that State, or within any possession
of the United States (not including the Canal Zone) or the
District of Columbia, but such term does not include commerce
between places within the state but through any place outside
that State. The term "State" includes the District of Columbia,
the Commonwealth of Puerto Rico, and the possessions of the
United States (not including the Canal Zone).

Between the two definitions, 18 USCS § 922(a)(C), and 18 USCS

§ 921(a)(2), neither one of them make any specific reference to

"unincorporated territory" as Guam is declared to be in Title 48

USCA §_1421a. or "Insular Areas" as Guam is referred to be by Congressional

declaration of policy respecting "Insular Areas" in Title 48 USCA

§ 1469a. See Title 48 USCA "Territories an Possessions".

Title 18 USCS § 922 is dependent on three things in this matter,

"interSTATE commerce" and commerces' relation among "STATES" and

dependent upon the relationship of one State to another. Or, the

relationship of a State to a Foreign country, or vice versa. And

thirdly, the validity of the Commerce Clause, Art. 1, §. 8, cl. 3

to permit its use, and or application.

(22)

The unincorporated island of Guam certainly is neither a "STATE" or a "Foreign Country" to permit the use of the Congressional Constitution Provision **Art. 1, §. 8, cl. 3**. Furthermore, Guam's inhabitants do not possess any voting rights as a citizen of the United States, yet they do possess U.S. citizenship.

The Commerce Clause Art. 1, §. 8, Cl. 3 of the United States Constitution <u>itself</u> permits a trial for violating the provision of interSTATE Commerce – a charge vital and legally essential for all firearm prosecutions under Title 18 USCS § 921 et. seq. of the Federal Firearm Statute. It is lacking here.

18 USCS § 922 cannot be brought, nor can they be sustained in the initial habeas motion in CV. No. # <u>99-00012</u> for they entail **interSTATE Commerce** deriving from the crossing of STATE lines to permit federal involvement, or, entering or leaving foreign countries. That also from the above mentioned – is invalid and inapplicable in this matter as well. Guam is neither Foreign, nor a STATE.

18 USCS § 924 under <u>Penalties</u> is dependent on both interSTATE and Foreign Commerce under the Constitutional provision **Art. 1, §. 8, cl. 3** of the United States Constitution. Also, under this statute, this Constitutional Provision <u>must</u> both be **valid** and <u>extended</u> by by the Congress to permit its application in criminal proceedings, and to hold this petitioner accountable, as in <u>United States v. Bell</u>, 90 F.3d 318. So, the Commerce Provision (Art. 1, §. 8, Cl. 3) to is also invaid and inapplicable in count-V (five) of this matter. Therefore this petitioner moves this court for relief from a void judgement in Civil No. # 99-00012 for lack of subject matter jurisdiction.

## V.  Grounds For Relief, And Relief Granted

There is a defect in the integrity of the judgement for defendent's intial motion under 28 USCS § 2255 in Civil No. # 99-00012 because the § 2255 Court failed its duty to sua sponte determine if the trial court below lacked subject matter jurisdiction over alleged federal firearm offenses that were based on the Commerce Clause Provision **Art. 1, §. 8, cl. 3** of the United States Constitution.

The habeas court should have determined first if the trial court in CR:95-00054-01 had jurisdiction under Art. 1, §. 8, cl. 3, and under Title 28 USCS § 1331 under **Commerce,** where such jurisdiction is necessary for the § 2255 Court to hear, review, and decide matters in Civil No. # 99-00012.

In Verlin v. Central Bank of Nigeria, 461 U.S. 480, 76 L.Ed 2d 81, 103 S.Ct. 1962 (1983) the United States Supreme Court stated that "A federal action must not only satisfy Article III but must also supported by a statutory grant of subject matter jurisdiction."

Subsection 1331 [28 USCS § 1331], is the statute that grants general federal question jurisdiction over any case that "arises under" the laws of the United States. Jurisdiction That has not been conferred upon the district court of Guam, see Title 48 USCS § 1424 **(b)** under **Jurisdiction.**

Jurisdiction under Art. 1, §. 8, cl. 3 of the Commerce Clause, and jurisdiction under 28 USCS § 1331 has not been extended to the government of Guam in it Organic Act, 48 USCA §§ 1421-1424 to exercise **Article III** District Court of the United States matters (jurisdiction) in a Article IV territorial court, to adjudicate Article III firearm offenses in Civil Action No. # 99-00012, that were born out of criminal proceedings in Criminal Case No. # CR:95-00054-01.

(24)

The United States Supreme Court held in <u>United States v. Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed 2d 860 (2002) that:

"Defects in subject matter jurisdiction can never be forfeited waived, and **require correction**, regardless of whether error was raised in the district court."

In Civil No.<u># 99-00012</u>, the § 2255 court never looked into construction of the firearm statute, a statute that was raised the throughout petitioner's initial § 2255 motion to <u>sua sponte</u> that the federal firearm statute is not a "free-standing" statute, but that it requires the provision, Art. 1, §. 8, cl.3 jurisdiction under the commerce clause of the United States to support it. Jurisdiction in which The Organic Act of Guam did not adopt, nor has been extended to Guam.

In viewing The Organic Act of Guam, Title 48 USCS § 1421b.(u), its is obvious on its face that the commerce clause has not been extended to Guam within those provisions. And it is also apparent that such jurisdiction (Art. 1, §. 8, cl. 3) is essential in all federal firearms prosecutions.

When subject matter or personal jurisdiction is contested under Fed.R.CV1.Pr. Rule 60(b)(4) on assertion that judgement is void, the burden of proof is properly placed on the party asserting that it has jurisdiction and that jurisdiction existed.

This Court has a Constitutional and statutorily mandated duty pursuant to Civil Procedure Rule 60 (b) (4) to reopen petitioner's <u>defective</u> initial § 2255 in Civil No. # <u>99-00012,</u> to reach the jurisdiction of the offenses in the judgement that the §.2255 Court failed to address in Civil No. # <u>99-00012</u>, and to take notice whether the trial court lacked subject matter jurisdiction to adjudicate federal firearm offenses that are based on Art. 1, §. 8. Cl. 3 of the United States Constitution.

(25)

**VI.**                         Conclusion

Pursuant to Federal Rules of Civil Procedure Rule 60 (b)(4) petitioner asks that this court reopen his initial § 2255 in Civil No. # 99-00012 in order for the court to reach and address the merits of the jurisdiction for the firearm offenses that appeared in petitioner's judgement, and the jurisdiction of those very same firearm offenses that were raised in petitioner's initial § 2255 by taking notice of the aforementioned raised herein that the court lacked subject matter jurisdiction to adjudicate the firearm offenses that were based on the Commerce Clause Provision Article 1, Subsection 8, Clause 3 of the United States Constitution which authorizes prosecutions for those offenses, was not adopted by the laws and constitution of Guam in its Organic Act, Title 48 USCA § 1421b. (u), et. seq.

Date: __November, 9th__, 2007.      Respectfully Submitted

                                        (Prepared by) Signature

                                        Honofre J.O. Chargualaf
                                        Reg. No. # 01107-093
                                        U.S.P Pollock
                                        P.O. BOX 2099
                                        Pollock, Louisiana. 71467

# CERTIFICATE OF SERVICE

I, _Honofre Chargualaf_ hereby certify that I have served a true and **correct**
copy of the following:

(2) Two full motions per Rule 60(b)(4).
1-original, and One Copy. And the forward
and reverse page of a third Copy for
Return file Copy Verification.

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the
court, _Houston v. Lack,_ 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and or
his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

and deposited in the United Postal Mail at united States Penitentiary
Pollock, LA. on this _9th_ day of _November_ , 2007.

_Honofre Chargualaf_

#01107-093

P.O. BOX 2099
POLLOCK, LA. 71467

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

# United States District Court

| District |
| OF GUAM |

| Name of Movant | Prisoner No. | Case No. |
| HONOFRE JAMES OLIVA CHARGUALAF | 01107-093 | 95-00054 |

Place of Confinement
UNITED STATES PRISON - FLORENCE, COLORADO

UNITED STATES OF AMERICA      V.   HONOFRE JAMES OLIVA CHARGUALAF
(name under which convicted)

## MOTION

FILED
DISTRICT COURT OF GUAM

JAN 2 5

MARY L. M. MORAN
CLERK OF COURT

1. Name and location of court which entered the judgment of conviction under attack

UNITED STATES DISTRICT COURT, TERRITORY OF GUAM

2. Date of judgment of conviction ___ NOVEMBER 20, 1995

3. Length of sentence ___ 44 YEARS

4. Nature of offense involved (all counts) ___ 18 USC §922(a)(4); 18 USC §922(o)(1); 18 USC §922(g)(3) and 21 USC §.841(a)(1); 18 USC §924(c)(1).

5. What was your plea? (Check one)
   (a) Not guilty      [X]
   (b) Guilty          [ ]
   (c) Nolo contendere [ ]

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury        [X]
   (b) Judge only  [ ]

7. Did you testify at the trial?
   Yes [ ] No [X]

8. Did you appeal from the judgment of conviction?
   Yes [X] No [ ]

## STATEMENT OF THE CASE

On April 19, 1995, the Federal Grand jury charged Chargualaf with: unlawful transportation of a machinegun (18 USC § 922. (a)(4); unlawful possession of a machinegun (18 USC § 922 (o)(1); unlawful possession of a firearm by a fugitive from justice (2 counts), (incorrectly cited as 18 USC § 922 (g)(3); instead of 18 USC § 922 (g)(2); possession with intent to distribute methamphetamine (3 counts)(21 USC § 841 (a)(1); unlawful carrying of a firearm equipped with a silencer during a drug trafficking crime (18 USC § 924 (c); and unlawful carrying of a firearm during a drug trafficking crime 918 USC § 924 (c). Six months later, on October 20, 30, and 31, 1995, the U.S. District Court heard Chargualaf's motion to suppress illegally seized evidence. On October 31st, the court denied his motion to suppress by an order the court file on November 9, 1995. On November 14th through November 16th, a jury tria was held. On November 20th, Chargualaf was convicted on all charges alleged in the indictment. On January 12th, 1996, the court heard Chargualaf's Motion For Acquittal, which was granted in part and denied in part on January 23th, 1996, On May 10th 1996, the court sentenced Chargualaf to forty-four (44) years imprisonment. A judgement of conviction was filed on May 20th and amended on May 22nd.

On May 28th, Chargualaf filed his Notice of Appeal. On May 21st, 1997, the Appellate Court filed an unpublished Memorandum in which it affirmed Chargualaf's conviction.

Chargualaf timely petitioned the Supreme Court of Writ of Certiora on the single issue of the meaning of the "carry" element on 924 (c).

On June 15th, 1998 the Supreme Court denied the petition.

2

ry 11, 1995, the suspected narcotic was taken by Officer

n, property custodian to the Guam Police Department Crime

atory, where it was turned over to Ms. Zenobia Lynn, Criminalist,

scientific analysis. (TR 127). Ms. Lynn did not submit a formal

port into evidence, but merely wrote, ".1412 grams net of ice

Analyst = Zenobia Lynn" across the "Evidence/Property Custody

Receipt." (See Exhibit E). At trial, Lynn testified, "the results

of my analysis is the substance contained in this vial is 95 percent

methamphetamine hydrochloride." (TR 132). When asked if that was

"ice," she answered, "The common street name for crystal

methamphetamine is 'ice,' and this is the powdered form so I just

call it methamphetamine." (TR 133). Lynn also testified that the

total weight of the exhibit was .1412 grams and that she used .0194

gram net in the analysis (TR 134). This testimony conflicts with

the government's own witness William Moriwaki, Forensic Chemist

at the Western Regional Lab of the Drug Enforcement Administration

whose experience is vastly greater than Lynn's (TR 458-461). When

discussing government Exhibit 20 in this case this colloquy followed:

    Q - What was the result of your analysis of ... No. 20?
    A - I found it to contain .2 grams of d-methamphetamine
        hydrochloride.
    Q - Were you able to attach a purity to that exhibit?
    A - Unfortunately, no. Due to the lack of amount here, it
        was deemed not possible ... (TR 477).

The federal government's involvement in this case started just

after Chargualaf's initial arrest in October, 1994. Special Agent

Blake Boteler of the Bureau of Alcohol, Tobacco And Firearms was

asked examine an H & K, model SP-89 to determine if it was a machinegun.

At that time he interviewed both Chargualaf and his brother Roy,

and took their signed affidavits. As can be seen from Chargualaf's

sworn affidavit, his entire prior affidavit made on October 28th

was a lie. (See Exhibit F). According to Boteler's testimony at

As to whether or not Chargualaf could be suspected of a user of methamphetamine, not only was a "pipe" found in car, but also there was a photo of him with the pipe to his th (See TR 171, 230, 295). The minute quantity found in argualaf's front coin pocket is indicative of that carried by a user and can easily be differentiated from the for sale quantities found in the other drugs seized during the raid on Chargualaf's house in March. As Boteler pointed out, it was his strategy to hang a drug trafficking crime on Chargualaf in order to make a violation of 18 USC § 924(c) viable. Next, utilizing this charge coupled with the inadequately investigated machinegun charges, the U.S. government obtained an indictment on March 29, 1995. Utilizing this indictment, an arrest warrant was issued and a raid pretexturely disguised as an execution of the arrest warrant, was immediately accomplished by a joint task force. This action was totally unneccessary as Chargualaf had always been cooperative, as testified to by all officers, and would have self-surrendered if he had been informed of the indictment as can be seen by his own affidavit (see Exhibit F). At the time of his arrest, Chargualaf was handcuffed and placed in the back of a police car for a long period of time until he was finally badgered into permitting the raiders to search his home, their true purpose in this raid. They could have obtained a search warrant, but elected not to do so.

Approximately eight and one half (8½) months later, Chargualaf was finally brought to trial. His first attorney had attempted to suppress most of the evidence which was eventually used at Chargualaf's trial, but unfortunately he based his motion on the wrong reasons. The attorney then claimed that there existed an irreconcilable conflict between himself and Chargualaf and was

9

failure to investigate clearly prejudiced him to the

of denying him a fair trial.

1) Unlawful Transportation of a "Machinegun"

The government's entire case against Chargualaf on this count was based on Chargualaf's own statement that he had brought "parts" of a machinegun to Guam in May, 1994. As can be seen in Chargualaf's affidavit (Exhibit F), that entire statement was a lie made up to protect his younger brother, Roy. Chargualaf (like the jury) did not know that "parts" of a machinegun would qualify as a violation of this law and he felt that by claiming they came from a Class III dealer almost five years before, he could not be prosecuted. In fact, Arriola's investigation would have determined:

    a) Chargulaf didn't have the financial ability to pay $500 for a part and then hide it away for over 4 years in the hopes that he or Roy could buy an HK-SP89 to which this part could be attached.

    b) The Customs Department's inspection procedures are of such a nature that the smuggling in of these "parts" would have been almost impossible. An interview with a Customs Officer would have shown that to Arriola and given him a good defense witness for the trial.

    c) Roy gave an affidavit that the machinegun was both registered to him and owned by him and had been in his possession until he gave it to his brother for transportation to his new home on the same day that it was found in Chargualaf's car

    2) Unlawful Possession of a "Machinegun"

The government's case on this count was based on the gun being found in Chargualaf's car. Had the car not been "impounded" by Officer Babauta, the gun would have been given to Roy as soon as either of the brothers recognized that it had inadvertently been left in Chargualaf's car. An investigation would have shown:

    a) The "Classic Impala" had just come into Guam. This could have been confirmed with records from the Port Authority. It is the law and the policy of the police that full faith and credit be given to the laws of other states. Consequently, Babauta's statement regarding the basis for impounding the vehicle was incorrect. The Port Authority had released the car only 3 days prior.

13

Imagine the effect that impounding every vehicle that
drove from one state to another would have upon travel.
Investigation would have shown that a grace period is
both policy and procedure for the police.

b) An interview of Chargualaf's brothers, Roy and James
would have shown that Chargualaf did not place the guns
under the seat of his car and had no way of knowing
that they were there.

3) Unlawful Possession of a Firearm by A Fugitive

An investigation of the codes would have shown that Chargualaf

was actually indicted for 18 USC 922(g)(3), Drug User or Addict

in Possession of a Firearm. Since it was never established at

trial that Chargualaf was a drug user, this charge would have failed.

4) Possession With Intent To Distribute Methamphetamine

The government's case on this count was based on .1412 grams of

methamphetamine being found on Chargualaf after his arrest and

second pat down at the police station.

a) This illegal search and seizure based on an improper
arrest in light of the recent Supreme Court case of
Knowles v. Iowa, 97-7597 will be discussed fully in
another part of this memorandum. However, at the least,
had Arriola investigated the pretextural stop and subsequent
arrest and interviewed Babauta, he would have found:

   1) Babauta made two, not one investigation of the
car. At the second search (re-check), he
testified he felt safe, as another police
vehicle was on the scene. It was at this
"re-check" that the Baretta was found.
   2) At that time, Chargualaf was at the rear of the
car and could not have reached the gun in the
car easily.
   3) Babauta knew that the guns found at his search
of Chargualaf's car 2+ months earlier belonged
to Chargualaf's brother, not to Chargualaf.
   4) That because of 1-3, the gun and drugs were not
found during a valid "protective weapons search."
   5) By Babauta's own statement, Chargualaf's car was
legally registered, the only reason to impound
the car was because of the Baretta found during
the illegal "safety" "re-check". Since no arrest
had been made the "re-check" was illegal and the
gun found not proper basis for an impound. If no
impound was proper, no "impound inventory" could
be proper either. Therefore, the subsequent
arrest was illegal as was the second pat down which
resulted in the discovery of the suspected drugs.

1   that the police had arrested an individual who was in
2   possession of what they believed was a machine gun, and they
3   asked for my assistance to come over and identify it. So at
4   10:00 in the morning I went over to Pedro's Plaza and examined
5   the H & K, model SP-89, 9 millimeter machine gun, serial
6   number 21-16144, and --
7           Q       Why was that machine gun within the federal
8   statutes?
9           A       I field tested the firearm and found that it would
10  function as a machine gun because it would fire more than one
11  round with a single pull of the trigger.
12          Q       How many rounds would it fire?
13          A       As many as were in the magazine.
14          Q       How many did the magazine hold?
15          A       I believe 30.
16          Q       How long would it take that weapon to fire 30
17  rounds?
18          A       Approximately two to two-and-a-half seconds.
19          Q       Did it have a lower receiver with a selector
20  switch?
21          A       Yes, it did. It had a lower receiver, and the
22  selector switch displayed three distinct letters, an "S," an
23  "E," and an "F." If you had the selector switch in the "S"
24  position, I believe that stood for "Safe;" the firearm would
25  not function; you would not be able to fire the firearm.

                                                            3

1      I moved the selector switch to the "E" selection,
2   and then it functioned as a semi-automatic firearm, meaning it
3   would fire one round, or one bullet each time you pulled the
4   trigger, but no more.

5      When I moved it to the "F" position, it function[ed]
6   as a fully automatic weapon or machine gun, because if you
7   would pull the trigger, it would fire as many rounds as long
8   as you held the trigger.

9      The "E," I'm not sure what it stands for, because
10  you have to remember this is an H & K or Heckler and Kopt gun,
11  and they're made in Germany, and so many of their designations
12  are in German, so --

13      Q      Did you attempt to locate and interview the owner
14  of that machine pistol; that would be the brother of the
15  defendant, and that would be Mr. Roy Chargualaf?

16      A      Yes, we did.  As you indicated the firearm was
17  registered to a Roy Chargualaf.  We contacted Roy Chargualaf
18  and interviewed him at his residence there in Sinajana.
19  Excuse me, not Sinajana -- Inarajan.

20      Q      When was that?

21      A      It was about 6:30 in the evening of the 28th.

22      Q      Was Roy Chargualaf cooperative with you, and did
23  he make statements to you?

24      A      Yes, he did.

25      Q      What did Roy tell you about the machine pistol in

                                                              4

1          down from North Carolina, and that he was

2          Class III licensed. Since the day it was

3          purchased it was kept at my grandmother's

4          house in San Diego, California, until May

5          of this year when I brought it back as

6          parts. As far as the seller is concerned

7          I don't remember a name. It was a one-

8          time offer for $500."

9     Signed Honofre Chargualaf.

10         Q     In his oral statement did he make admissions that

11    were similar or identical to what he wrote?

12         A     Yes, he did. He'd indicated that he'd brought the

13    select fire receiver back on May 11 or 12.

14         Q     Now Count I of the proposed indictment alleges

15    unlawful transportation of a machine gun. Is it unlawful,

16    federally, to transport portions or part of a machine gun

17    rather than the entire machine gun itself?

18         A     Yes. Under federal law the machine gun is the

19    machine gun, but it also is any parts or combination of parts

20    that are designed to convert a gun to a machine gun. So if

21    you have a number of parts in which their sole design is to

22    make a normal gun into a machine gun, those parts are

23    considered a machine gun.

24         Q     So what was it that Honofre Chargualaf did in this

25    case that would constitute an unlawful transportation in

7

1   question?

2          A       Roy indicated that he and his brother, meaning
3   Honofre, had put their money together and had purchased that
4   firearm as well as eight or nine other firearms. He indicated
5   that the lower receiver with the selector switch portion of
6   the gun his brother Honofre had purchased in California and
7   had brought to Guam, from California, a few months earlier,
8   and he indicated he knew that the select fire -- selector
9   switch -- on that would make the SP-89 act as a machine gun.

10         Q       Did you ask Roy any questions about what had
11  happened earlier, the day before, that led up to the stop, and
12  how it came to be that the gun had been in his brother's
13  possession?

14         A       Yeah. Roy had mentioned that he had been moving,
15  and that in the course of moving some of these guns to a more
16  secure location, that they inadvertently left the guns behind
17  in his brother's car.

18         Q       Did you attempt to locate the defendant himself,
19  Honofre Charqualaf?

20         A       In fact did that same evening. Probably about
21  eight o'clock, Honofre Charqualaf arrived at Roy Charqualaf's
22  residence but he was obviously intoxicated. We chose not to
23  interview him at that time. We asked him to come to our
24  offices at a later date and to call us to set-up a time. He
25  did call and in fact arrived on October 31. At approximately

5

1  hcharg.ans

2  FREDERICK A. BLACK
   United States Attorney
3  JOSEPH F. WILSON
   Assistant U.S. Attorney
4  Suite 502-A, Pacific News Bldg.
   238 Archbishop Flores Street
5  Agana, Guam 96910
   PHONE: (671) 472-7332
6  FAX: (671) 472-7334

7  Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM

APR 1 9 1999

MARY L.M. MORAN
CLERK OF COURT

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE TERRITORY OF GUAM

11

12  UNITED STATES OF AMERICA,           )    CRIMINAL CASE NO. 95-00054
                                         )
13              Plaintiff-Respondent,    )
                                         )    **ANSWER TO MOTION TO**
14         vs.                           )    **VACATE, SET ASIDE, OR**
                                         )    **CORRECT SENTENCE**
15  HONOFRE J. O. CHARGUALAF             )
                                         )
16              Defendant-Petitioner.    )
   _____)

17

18
        Pursuant to Rule 5 of the Rules Governing Proceedings in the United States District Courts
19
   under Title 28, United States Code, Section 2255, the United States of America, Plaintiff-
20
   Respondent, hereinafter Government, by the United States Attorney for the District of Guam, files
21
   this answer and supporting brief, and respectfully moves this Court to deny Honofre J. O.
22
   Chargualaf's, Defendant-Petitioner, hereinafter Petitioner, Motion to Vacate, Set Aside, or Correct
23
   Sentence.
24
        Petitioner seeks relief first on the basis of the ineffective assistance of trial counsel. Petitioner
25
   alleges ineffective assistance of trial counsel resulting from numerous instances of failure to
26
   investigate. He characterizes those alleged failures to investigate as:
27
        (1) Regarding the charge of unlawful transportation of a machine gun, as charged in
28

Count I of the Superseding Indictment, an investigation would have "determined":

    a) Petitioner "didn't have the financial ability to pay $500 for a part and then hide it away for aver 4 years in the hopes that he or Roy could buy a HK-SP89 to which this could be attached";

    b) Counsel could have located a "good defense witness" by interviewing a "Customs Officer" who "would have shown" that the "Customs Department's inspection procedures are of such a nature that the smuggling in of these parts would have been almost impossible";

    c) "Roy gave an affidavit that the machine gun was both registered to him and owned by him and had been in his possession until he gave it to his brother for transportation to his new home on the same day that it was found in Chargualaf's car";

(2) Regarding the charge of unlawful possession of a machine gun, as charged in Count II of the Superseding Indictment, an investigation "would have shown":

    a) That Officer "Babauta's statement regarding the basis for impounding the vehicle was incorrect" because his vehicle had just arrived on Guam and "a grace period is both policy and procedure for the police ";

    b) An interview of Petitioner's brothers, James and Roy, "would have shown that Chargualaf did not place the guns under the seat of his car and had no way of knowing that they were there";

'3) Regarding the charge of unlawful possession of a firearm by a fugitive, as charged in Counts III and VI, an "investigation of the codes would have shown" that Petitioner was charged with a violation of 18 U.S.C. § 922(g)(3), "Drug User or Addict in Possession of a Firearm." Since no evidence was adduced at trial that Petitioner was a drug user, Petitioner argues there was a failure of proof for those counts;

(4) Regarding the charge of possession with intent to distribute methamphetamine, as charged in Counts IV, VII and VIII:

    a) An investigation by his counsel would have revealed the stop was "pretextural"

2

1 that Petitioner should not have been convicted of a violation of 18 U.S.C. § 924(c), because the drugs

2 were "found" on him at the police station rather than the scene of the January 4, 1995 stop.

3 Petitioner reasons "[n]o drugs at the scene of the arrest means no drug trafficking."

4      Petitioner further alleges appellate counsel was ineffective for failing to raise the issue of the

5 legality of the March 30, 1995, search of his residence due to "the task force" failing to obtain a

6 search warrant "prior to the raid to arrest" him. Petitioner further claims his appellate counsel was

7 ineffective in failing to raise the issue of the arrest warrant being the "fruit of the poisoned tree"

8 because the warrant was based "upon the two prior illegal searches and seizure."

9      As separate grounds for relief, Petitioner claims he suffered from Prosecutorial misconduct

10 and breach of Judicial Discretion because the trial court: 1) failed to suppress evidence seized during

11 an illegal search and seizure, 2) failed to protect Petitioner against the ineffective assistance of

12 counsel; 3) failed to investigate the jury's inability to speak or understand English; and, 4) failed to

13 insure that the entire court proceedings be transcribed.

14 I.     <u>Jurisdiction</u>

15      This Court has jurisdiction over the subject matter and parties pursuant to Title 28, United

16 States Code, Section 2255.

17 II.    <u>Transcripts</u>

18      The transcripts of the hearing on Petitioner's motion to suppress, trial, hearing on Petitioner's

19 motion for judgment of acquittal and sentencing hearing are before this Court under the Petitioner's

20 criminal action. In this Response, the government has designated the transcript of the suppression

21 hearing as Suppression Tr.; the transcripts of the trial are designated as Trial Tr., Vol. I, II, or III; the

22 transcript of the hearing on the motion for judgment of acquittal is designated as Acquittal Tr.; and,

23 the transcript of the sentencing hearing is designated as Sentencing Tr.

'4 III.   <u>Nature of the Case, Course of the Proceedings, and Disposition in the Court Below</u>

     On April 19, 1995, a Federal Grand Jury in the District of Guam charged Petitioner in a nine

count "Superseding Indictment" with unlawful transportation of a machine gun, unlawful possession

of a machine gun, two counts of unlawful possession of a firearm by a fugitive from justice, three

6

the result of the proceeding would have been different. United States v. Murray, 751 F.2d 1528, 1535 (9th Cir.), cert. denied, 474 U.S. 979 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Additionally, in deciding whether a defendant was incompetently defended, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Petitioner must show that his counsel failed to exercise the skill, judgment, or diligence of a reasonably competent attorney. Weygandt v. Ducharme, 774 F.2d 1491, 1493 (9th Cir. 1985).

## A. Failure to Investigate

Petitioner contends he received ineffective assistance of trial counsel because his attorney failed to conduct investigation and interviews. Ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case because "[w]hen, ... the prosecution has an overwhelming case based on documents and the testimony of disinterested witnesses, there is not too much the best defense attorney can do." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986), quoting, United States v. Decoster, 624 F.2d 196, 210 (D.C. Cir. 1976) (en banc).

Petitioner alleges his counsel failed "to address material deviations from prior statements" and "didn't even adequately read or review the documents provided to him by the government." (Motion at 12). These claims are vague and conclusory. See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990). The government will attempt to set forth its response to Petitioner's specific claims of ineffective assistance of trial counsel in the order presented by Petitioner.

1). "Unlawful Transportation of a 'Machinegun'."

Petitioner first asserts ineffectiveness due to counsel's failure to investigate his lack of "financial ability" to have purchased and retained the lower receiver. This claim is vague and conclusory. Importantly, Petitioner does not claim he informed his attorney of his lack of financial resources. Following his arrest, Petitioner admitted to having purchased the lower receiver and subsequently bringing it to Guam. While an attorney does have the duty to conduct reasonable

14

1  was faced with a situation in which the "star" witness and "protected" family member, had pled guilty

2  to a felony count of illegally transferring another firearm to his client.

3      Petitioner's claim that a Customs Officer could have been located to testify that it "would

4  have been almost impossible" for a lower receiver to have been smuggled into Guam is frivolous.

5  "[T]he duty to investigate and prepare a defense is not limitless: it does not necessarily require that

6  every conceivable witness be interviewed." Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir.

7  1995), quoting, U.S. v. Tucker, 716 F.2d 576, 584 (9th Cir. 1983). In addressing the issue of the

8  duty of an attorney to locate a witness, the Ninth Circuit has stated "[w]here this Court has found a

9  failure to locate potential witnesses to constitute incompetent lawyering, the attorney refused to

10  perform any investigation into leads directly related and of potentially great benefit to the defense."

11  Hendricks v. Calderon, 70 F.3d at 1040, citing, Sanders v. Ratelle, 21 F.3d 1446, 1456-57 (9th Cir.

12  1994).

13      The logical extension of Petitioner's argument is that his attorney had a duty to interview

14  Customs Officers until he found one amiable enough to offer an opinion that it is unlikely a lower

15  receiver could have been smuggled onto Guam because of the Customs' check. This type of claim

16  was addressed by the Ninth Circuit when it stated, "[w]hile the Sixth Amendment requires an attorney

17  to look for evidence that corroborates the defense he pursues, the Sixth Amendment has not been

18  expanded to require an attorney to hunt down such marginally relevant and indirectly beneficial

19  evidence. Even assuming the existence of a duty to find evidence that bolsters a key witness'

20  credibility by corroborating irrelevant facts in his testimony, such evidence is so loosely tied to the

21  defense that its absence would not undermine confidence in the outcome." Hendricks v. Calderon,

22  70 F.3d at 1040-41, citing, Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Petitioner has failed to

23  establish either error or omission by counsel, or resulting prejudice.

24      2). "Unlawful Possession of a 'Machine gun'."

25      Petitioner first argues that since his vehicle had only arrived on island three days prior

26  to the night of the first stop, investigation would have revealed "a grace period is both policy and

27  procedure for the police." (Motion at 14). This argument is meritless and contrary to the previous

28

16

1  purchased the lower receiver and that he (Roy Chargualaf) was unaware the lower receiver was on

2  the firearm created a strong inference that Petitioner knowingly possessed the machine gun on the

3  night of his arrest. Additionally, Petitioner's own statement that he purchased and brought the lower

4  receiver to Guam, his conduct in locking the door of his vehicle and his statement to Officer Babauta

5  that his brother gave the firearms to him and he kept them in the car all day was evidence of his

6  knowing possession. Consequently, Petitioner has not only failed to show a failure to investigate by

7  his trial counsel, he has not shown any resulting prejudice. The only evidence that Petitioner did not

8  knowingly possess the machine gun is Petitioner's belated self-serving statement.

9          3). "Unlawful Possession by a Fugitive."

10          Petitioner argues his attorney failed to investigate "the codes" to know he was indicted

11  for a violation of Title 18, U.S.C., § 922(g)(3) on Counts III and VI. That section makes it unlawful

12  for a drug user or addict to possess a firearm. Petitioner reasons there was a lack of proof he was

13  either a drug user or addict. The Superseding Indictment, on Counts III and VI, did recite at the end

14  of the charge, "in violation of Title 18, United States Code, Section 922(g)(3)." However, Petitioner

15  could not have been confused regarding what he was charged with because the body of the charges

16  stated he possessed and received the firearms as alleged when he was "at that time being a fugitive

17  from justice, to wit, in Bench Warrants pending in the District Court, County of El Paso, State of

18  Colorado, Criminal Actions 91CR2019 and 92CR503 for First Degree Trespass and Bond Jumping."

19  Courts generally do not regard the statutory citation as part of the indictment. "A conviction may be

20  sustained on the basis of a statute or regulation other than that cited or even where none is cited at

21  all, as long as it is clear that the defendant was not prejudicially misled." United States v. Lipkis, 770

22  F.2d 1447, 1452 (9th Cir. 1985).

23          On the first day of the trial, November 13, 1995, the government moved to amend the

24  Superseding Indictment. Petitioner's counsel objected, but the district court overruled the objections.

25  (Master Docket Sheet, Entry 60a). Petitioner failed to have the proceedings of November 13, 1995

26  transcribed. A conversation took place between the attorneys and the district court concerning the

27  corrections of the statutory citation in Counts III and VI from §922(g)(3) to (g)(2). (Trial Tr. 556).

28                                          19

1    Petitioner was never misled regarding what he had to defend. The charging terms were never altered
2    only the statutory citation subsection of § 922(g) was changed. If the government had not requested
3    a correction of the indictment, the result would have been a non-prejudicial variance that would not
4    affect the validity of the conviction. See, e.g., <u>United States v. Momeni</u>, 991 F.2d 493, 495 (9th Cir.
5    1993); <u>United States v. Laykin</u>, 886 F.2d 1534, 1544 (9th Cir. 1989); <u>United States v. Von Stoll</u>,
6    726 F.2d 584, 587 (9th Cir. 1984). The fact that the district court granted the government's request
7    and corrected the indictment does not change, nor should it change, the outcome. Thus, the
8    correction was proper. Furthermore, the jury was instructed that Counts III and VI were for
9    violations of 18 USC § 922(g)(2). (Trial Tr. 556, 568-69, 578, 582-84). Petitioner's counsel neither
10   failed to investigate this matter nor did Petitioner suffer any prejudice.
11        4). "<u>Possession With Intent To Distribute Methamphetamine</u>."
12              Petitioner lists a variety of complaints about his attorney's alleged failure to investigate
13   or interview witnesses concerning the stop on January 4, 1995, the evidence seized following that
14   stop, and the testimony of agents concerning the evidence seized or obtained following the stop.
15   Petitioner's reliance on the United States Supreme Court decision of <u>Knowles v. Iowa</u>, 119 S.Ct. 484
16   (1998) is misplaced. <u>Knowles</u> concerned a search incident to citation. <u>Knowles v. Iowa</u>, 119 S.Ct.
17   at 486. Whereas, Petitioner's case was both an inventory and protective search. See, <u>United States</u>
18   <u>v. Chargualaf</u>, 114 F 3d 1196, 1997 WL272225(9th Cir. (Guam) at 2).
19   Petitioner claims his attorney should have interviewed Officer Babauta to determine the stop
20   of January 4, 1995, was an illegal pretextual stop. These conclusory allegations reveal nothing of
21   substance. The attorney did question Officer Babauta when the officer testified during the
     suppression hearing. Officer Babauta testified he conducted a pat down search after removing
     ~titioner from the vehicle and had him stand at the rear of the vehicle while he conducted a search of
     ~erior for weapons. (Suppression Tr. 38-44). Officer Babauta observed Petitioner speeding and
     ~ displaying a license tag. Petitioner was unable to produce a valid Guam driver's license or
     ~ration. While talking to Petitioner, Officer Babauta smelled alcohol and observed an
     ~ partially concealed. After asking Petitioner to get out of the vehicle, another
28
                                        20

conduct a field sobriety test was developed at the suppression hearing. Petitioner fails to explain how this contradicts "the government's and the appellate court's opinion." These are arguments Petitioner lost at the district court and the Ninth Circuit. Merely placing the label "failure to investigate" in front of the arguments does not cast doubt on the correctness of the previous decisions. Petitioner offers no new evidence.

Petitioner's argument that investigation by his attorney "would have shown that Chargualaf could not have been guilty of 924(c)" is also conclusory. The fact that the drugs weren't discovered until he was searched at the police station was revealed at Petitioner's trial. It was for the jury to decide whether the failure to locate the drugs at the first pat down of Petitioner was of any factual significance. As a matter of law, the subsequent discovery did not result in a failure of proof. Petitioner has cited no authority for this proposition. The jury could reasonably determine Petitioner had possession of the methamphetamine at the time of the stop because it was in his possession when he was searched at the police station during his detention. Petitioner's argument that the failure to locate the methamphetamine at the scene before his person was subject to a more intensive search precluded his conviction for violating 18 U.S.C. §924(c) is pure sophistry.

Petitioner's argument that his attorney should have hired an independent chemist to testify that the small amount of methamphetamine could not be tested for purity thus impeaching the testimony of Criminalist Lynn is also conclusory. Furthermore, his claim that one chemist, William Moriwaki, testified it wasn't possible to test the purity of a small amount of methamphetamine hydrochloride is misleading. First, Criminalist Lynn was talking about Government Exhibit #12, (Trial Tr. 129), whereas Forensic Chemist Moriwaki was discussing Government Exhibit #20 (Trial Tr. 477). Secondly, Moriwaki' full statement regarding why the purity test was not done on Exhibit #20 was: "Due to the lack of amount here, it was deemed not possible or not necessary to figure out a purity on the sample." (Trial Tr. 477) (Emphasis added). The issue of whether the amount of methamphetamine found on Petitioner on January 4, 1995, was for personal use or for distribution was placed before the jury. Petitioner speculates what the testimony of an "expert" regarding the small amount of methamphetamine would be. The pipe was introduced into evidence. (Trial Tr.

22

1 Special Agent Anderson testified he was present at the interview in the role of a witness. (Trial Tr.
2 409, 435). Special Agent Anderson's statement that he wasn't present "in January" was a reference
3 to the arrest scene of January 4th, not the interview. (Trial Tr. 410).

4     5). "Unlawful Carrying of a Firearm Equipped with a Firearm Silencer During a Drug
5 Trafficking Crime."

6     Petitioner's claims that the drugs "were not discovered at the scene of the crime", that
7 the drugs "were only for personal use", and that the drugs "were not properly tested for purity" have
8 been previously addressed in this Response. All of these matters were either raised at the suppression
9 hearing or at the trial. That "additional issues" would have been raised upon "proper investigation
10 and interviewing" is conclusory. As previously discussed, Petitioner's reliance on the United States
11 Supreme Court decision in Knowles v. Iowa, is misplaced because that decision is inapposite to the
12 facts of his case. Furthermore, his allegation that Officer Babauta had a "cavalier attitude about
13 impounding cars" is conclusory.

14     6). "All Evidence Seized During the Search Conducted on March 30th."

15     Petitioner's allegations in this section are conclusory and vague. During the hearing
16 on the Motion to Suppress, evidence relating to the arrest and consent to search was developed.
17 Petitioner does not articulate what additional investigation was needed or what such additional
18 investigation would reveal. Issues regarding Petitioner's consent to the search of his residence were
19 previously raised and adversely decided. Petitioner apparently desires another opinion. The adverse
20 decision by the trial court and the Ninth Circuit was not a result of a failure to investigate by his
21 attorney, but of the facts themselves.

22     In this portion of his Motion, Petitioner uses statements like "'permission' to search was
23 coerced", "Chargualaf was painfully handcuffed", and "[c]an a man who is being tortured give
24 consent?" (Motion at 16-17). These statements and others in his motion raise questions regarding
25 the lack of specific information or testimony to support the allegation. In this Response, the
26 government has addressed the issue that Petitioner has failed to allege he informed his attorney of
27 facts which might have resulted in a duty for counsel to conduct investigation of certain matters

28

24

# ORIGINAL

1  hchargu.ind

2  FREDERICK A. BLACK
   United States Attorney

3  JOHN N. GLANG
   Assistant U.S. Attorney

4  Suite 502-A, Pacific News Bldg.
   238 Archbishop Flores Street

5  Agana, Guam  96910
   PHONE:  472-7332

6  FAX:  472-7334

7  Attorneys for the United States of America

8

F I L E D
DISTRICT COURT OF GUAM
AGANA, GUAM

MAR 29 1995

MARY L. M. MORAN
Clerk Of Court

9              IN THE UNITED STATES DISTRICT COURT

10                FOR THE TERRITORY OF GUAM

11

12  UNITED STATES OF AMERICA,     )   CRIMINAL CASE NO. CR 95-00054
                                  )
13                  Plaintiff,    )        INDICTMENT
                                  )
14                                )   UNLAWFUL TRANSPORTATION
                                  )   OF A MACHINEGUN
15                                )   [18 U.S.C. § 922(a)(4)]
                                  )   UNLAWFUL POSSESSION OF
16                                )   A MACHINE GUN
                                  )   [18 U.S.C. § 922(o)(1)]
17           vs.                  )   UNLAWFUL POSSESSION OF
                                  )   A FIREARM BY A FUGITIVE
18                                )   FROM JUSTICE (2 COUNTS)
                                  )   [18 U.S.C. § 922(g)(3)
19                                )   POSSESSION WITH INTENT TO
                                  )   DISTRIBUTE METHAMPHETAMINE
20                                )   [21 U.S.C. § 841(a)(1)]
                                  )   UNLAWFUL CARRYING OF A
21  HONOFRE JAMES OLIVA CHARGUALAF,)  FIREARM EQUIPPED WITH A
    DOB:  4-4-69                  )   FIREARM SILENCER DURING A
22                                )   DRUG TRAFFICKING CRIME
                    Defendant.    )   [18 U.S.C. § 924(c)
23  ────────────────────────────── )

24

25  THE GRAND JURY CHARGES:

26

1        **COUNT I - UNLAWFUL TRANSPORTATION OF A MACHINE GUN**

2        On and between May 11, 1994 through May 12, 1994, the

3 defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and

4 unlawfully transport in interstate and foreign commerce a machine

5 gun (as defined in section 5845 of the Internal Revenue Code of

6 1954), to wit, a select fire lower receiver of a Model SP-89, 9mm

7 machine-pistol, in violation of Title 18, United States Code,

8 Section 922(a)(4).

9        **COUNT II - UNLAWFUL POSSESSION OF A MACHINE GUN**

10        On or about October 27, 1994, the defendant, HONOFRE JAMES

11 OLIVA CHARGUALAF, did knowingly and unlawfully possess a machine

12 gun, to wit, a Heckler & Koch, Model SP-89, 9mm machine pistol,

13 Serial# 21-16144, in violation of Title 18, United States Code,

14 Section 922(o)(1).

15      **COUNT III - UNLAWFUL POSSESSION OF A FIREARM**
               **BY A FUGITIVE FROM JUSTICE**

16        On or about October 27, 1994, the defendant, HONOFRE JAMES

17 OLIVA CHARGUALAF, did knowingly and unlawfully possess a firearm

18 in and affecting commerce and did receive a firearm which had

19 been shipped and transported in interstate and foreign commerce,

20 to wit, a Heckler & Koch, Model SP-89, 9mm machine pistol,

21 Serial# 21-16144, said defendant at that time being a fugitive

22 from justice, to wit, in Bench Warrants pending in the District

23 Court, County of El Paso, State of Colorado, Criminal Actions

24 91CR2019 and 92CR503 for First Degree Trespass and Bond Jumping,

25 in violation of Title 18, United States Code, Section 922(g)(3).

26

## COUNT IV - POSSESSION WITH INTENT TO
## DISTRIBUTE METHAMPHETAMINE

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, to wit, .1412 grams of methamphetamine hydrochloride or "ice", in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT V - UNLAWFUL CARRYING OF A FIREARM EQUIPPED
## WITH A FIREARM SILENCER DURING A DRUG
## TRAFFICKING CRIME

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did unlawfully and knowingly use and carry a firearm, to wit, a Beretta, Model 71, .22 caliber semi-automatic pistol, Serial# 64311, equipped with a firearm silencer, during and in relation to a drug trafficking crime, to wit, Possession with Intent to Distribute Methamphetamine, in violation of Title 18, United States Code, Section 924(c).

## COUNT VI - UNLAWFUL POSSESSION OF A FIREARM
## BY A FUGITIVE FROM JUSTICE

On or about January 4, 1995, the defendant, HONOFRE JAMES OLIVA CHARGUALAF, did knowingly and unlawfully possess a firearm in and affecting commerce and did receive a firearm which had been shipped and transported in interstate and foreign commerce, to wit, a Beretta, Model 71, .22 caliber semi-automatic pistol, Serial# 64311, said defendant at that time being a fugitive from justice, to wit, in Bench Warrants pending in the District Court, County of El Paso, State of Colorado, Criminal Actions 91CR2019

3

FORM OBD-xx
MAR 83

and 92CR503 for First Degree Trespass and Bond Jumping, in violation of Title 18, United States Code, Section 922(g)(3).

DATED this 29ᵗʰ day of March, 1995.

A TRUE BILL.

_Robert A.C. Soblan_

ROBERT A.C. SABLAN
Deputy Foreman


FREDERICK A. BLACK
United States Attorney
Districts of Guam and CNMI


By: _John N. Glang_

JOHN N. GLANG
Assistant U.S. Attorney

4

(NOTE: Identify Changes with Asterisks (*))

FILED
DISTRICT COURT OF GUAM

MAY 22 1996

MARY L. M. MORAN

# United States District Court

## District of Guam

UNITED STATES OF AMERICA
v.

### HONOFRE JAMES OLIVA CHARGUALAF

**Date of Original Judgment:** 05/10/1996
*(or Date of Last Amended Judgment)*

**Reason for Amendment:**

___ Correction of Sentence on Remand (Fed. R. Crim. P. 35(a))

___ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

___ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(c))

___ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36))

## AMENDED JUDGMENT IN A CRIMINAL CASE

(For Offenses Committed On or After November 1, 1987)

Case Number: **1:95CR00054-001**

<u>JOAQUIN C. ARRIOLA, JR., Court Appointed</u>
Defendant's Attorney

___ Modification of Supervision Conditions (18 U.S.C. § 3563(c) or 3583(e))

___ Modification of Imposed Term of Imprisonment for Extraordinary and Competing Reasons (18 U.S.C. § 3582(c)(1))

___ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

___ Direct Motion to District Court Pursuant to ___ 28 U.S.C. § 2255,
   ___ 18 U.S.C. § 3559(c)(7), or ___ Modification of Restitution Order

## THE DEFENDANT:

___ pleaded guilty to count(s) _____

___ pleaded nolo contendere to count(s) _____ which was accepted by the court.

_X_ was found guilty on count(s) **\* I, II, III, IV, V, VI, VII, VIII** after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. ' 922 (a)(4) | Unlawful Transportation of a Machine Gun | 05/12/1994 | I |
| 18 U.S.C. ' 922 (o)(1) | Unlawful Possession of a Machine Gun | 10/27/1994 | II |
| 18 U.S.C. ' 922 (g)(2) | Unlawful Possession of a Firearm by a Fugitive From Justice | 10/27/1994 | III |
| 21 U.S.C. ' 841 (a)(1) | Possession with Intent to Distribute Methamphetamine | 01/04/1995 | IV |

See Additional Counts of Conviction - Sheet 1.01

The defendant is sentenced as provided in pages 2 through __5__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___ The defendant has been found not guilty on count(s) _____

___ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: **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** | 05/10/1996 |
| Defendant's Date of Birth: **04/04/1969** | Date of Imposition of Judgment |
| Defendant's USM No.: **01107-093** | |
| Defendant's Residence Address: | |
| 163 N. Fanguluan St. | Signature of Judicial Officer |
| Malojloj          GU     96917 | **JOHN S. UNPINGCO** |
| | **U.S. DISTRICT COURT JUDGE** |
| Defendant's Mailing Address: | Name & Title of Judicial Officer |
| 163 N. Fanguluan St. | MAY 22 1996 |
| Malojloj          GU     96917 | Date |

DEFENDANT:        HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:      1:95CR00054-001

# ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| * 18 U.S.C. ' 924 (c) | Unlawful Use or Carrying of a Firearm During and in Relation to a Drug Trafficking Crime | 01/04/1995 | V |
| * 18 U.S.C. ' 922 (g)(2) | Unlawful Possession of a Firearm by a Fugitive from Justice | 01/04/1995 | VI |
| * 21 U.S.C. ' 841 (a)(1) | Possession With Intent to Distribute Methamphetamine | 03/30/1995 | VII |
| * 21 U.S.C. ' 841 (a)(1) | Possession With Intent to Distribute Methamphetamine | 03/30/1995 | VIII |

DEFENDANT:     HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER:   1:95CR00054-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of    **44    year(s)**

For Counts I, II, III, IV, VI & VII, defendant is to serve an imprisonment term of 120 months to be served concurrently. Such sentence is imposed so as not exceed the statutory maximums in Counts I, II & III.

For Count VIII, the defendant is to serve an imprisonment term of 168 months to run concurrent with Counts I, II, III, IV, VI & VII.

See Additional Imprisonment Terms - Sheet 2.01

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ a.m./p.m. on _____
  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____
  ☐ as notified by the United States Marshal.
  ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

Defendant delivered on _____ to _____
at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
                 Deputy U.S. Marshal

DEFENDANT:       HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER:     1:95CR00054-001

# ADDITIONAL IMPRISONMENT TERMS

For Count V, defendant is to serve an imprisonment term of 30 years to run consecutive to all remaining counts.

AO 245C (Rev. 3/95) Amended Judgment in a Criminal     Sheet 3 - Supervised Release          (NOTE: Identify Changes with Asterisks (*))

Judgment-Page __3__ of __5__

DEFENDANT:     HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:     1:95CR00054-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of      5    year(s)

This term consist of terms of three years for each of Counts I, II, III, IV, VI & VII. For Count VIII, the defendant is to serve a term of five years (5) supervised release to run concurrent to the remaining counts.

See Additional Supervised Release Terms - Sheet 3.01

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245C (Rev. 3/95) Amended Judgment in a Criminal Case    Sheet 5, Part A - Criminal Monetary Penalties    (NOTE: Identify Changes with Asterisks (*))

Judgment-Page   4   of   5

DEFENDANT:     HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER:    1:95CR00054-001

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | | Fine | | Restitution |
|---|---|---|---|---|---|
| Totals: | $    400.00 | $ | | $ | |

☐   If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . .   $ _____

**The defendant is ordered to pay the assessment fee immediately.**

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of    $ _____

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   The interest requirement is waived.

    ☐   The interest requirement is modified as follows:

# RESTITUTION

☐   The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☐   The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |
| **Totals:** | $ _____ | $ _____ | |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after

AO 245C (Rev. 3/95) Amended Judgment in a Criminal C     Sheet 6 - Statement of Reasons     (NOTE: Identify Changes with Asterisks (*))

Judgment-Page   5   of   5

DEFENDANT:     HONOFRE JAMES OLIVA CHARGUALAF

CASE NUMBER:     1:95CR00054-001

# STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

## OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

Counts I, II, III & IV are considered one group of closely related counts. Highest adjusted offense level for

See Additional Factual Findings and Guideline Application Exceptions - Sheet 6.01

## Guideline Range Determined by the Court:

Total Offense Level:     33

Criminal History Category:     I

Imprisonment Range:     135   to   168   months

Supervised Release Range:     5   to   5   years

Fine Range: $   17,500.00   to $   4,000,000.00

    ☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

    ☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

    ☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

    ☐ Partial restitution is ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☒ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

Grouping of Counts provide for penalty exceeding 24 mos. Count VIII requires mandatory minimum 10 yrs. Count V requires 30 yrs. consecutive sentence

## OR

☐ The sentence departs from the guideline range:

    ☐ upon motion of the government, as a result of defendant's substantial assistance.

    ☐ for the following specific reason(s):

DEFENDANT:      HONOFRE JAMES OLIVA CHARGUALAF
CASE NUMBER:    1:95CR00054-001

## ADDITIONAL FACTUAL FINDINGS AND GUIDELINE APPLICATION EXCEPTIONS

that group is 25.